OPINION
{¶ 1} Plaintiffs-appellants, Antoinette Gray, individually, and as administratrix of the estate of Orlando Lamar Gray ("Lamar"), Ernest E. Gray, and Monique E. Gray, appeal from a judgment of the Franklin County Court of Common Pleas denying their motion for summary judgment and granting the summary judgment motion of defendant-appellee, Grange Mutual Casualty Company ("Grange").
 {¶ 2} On September 8, 1999, Lamar was involved in a motor vehicle collision with defendant Craig D. Jackson. Lamar was transported from the accident scene to Selby [D1] General Hospital ("Selby") in Marietta, Ohio, where plaintiffs claim that necessary medical treatment was negligently omitted or delayed. Lamar was eventually transferred to a level one trauma center in Columbus, Ohio, where he died on September 18, 1999.
 {¶ 3} At the time of the accident, Jackson was insured under a policy of automobile liability insurance with coverage limits of $12,500 per person and $25,000 per occurrence. Selby and the treating physician, Dr. John S. Barton, III, were apparently insured under a professional liability policy of insurance with a coverage limit of $1,000,000.
 {¶ 4} Lamar was survived by his parents, Ernest and Antoinette Gray, and his sister, Monique Gray. At the time of the accident, Lamar's parents were the named insureds on an automobile liability insurance policy issued by Grange, with policy limits of $100,000 per person and $300,000 per occurrence. Monique was the named insured on a separate automobile liability policy issued by Grange, with policy limits of $50,000 per person and $100,000 per occurrence. Both policies included uninsured/underinsured motorist ("UM/UIM") coverage. In addition, Ernest was employed by Shell Oil Company, the named insured under an automobile liability policy issued by CIGNA Property Casualty Company ("CIGNA"). The CIGNA policy provided UM/UIM coverage with policy limits of $100,000 per person and $300,000 per accident.
 {¶ 5} Plaintiffs filed a complaint against Grange, Jackson, Selby, and Dr. Barton. Plaintiffs alleged negligence and wrongful death claims against Jackson and medical negligence and wrongful death claims against Selby and Dr. Barton. Plaintiffs also sought a declaration of rights under the UM/UIM provisions of the two Grange policies. In addition, plaintiffs alleged that Grange breached its duty of good faith in handling plaintiffs' claims. Plaintiffs later amended their complaint to add CIGNA as a defendant and to include causes of action underScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, and its progeny.[1]
 {¶ 6} Plaintiffs settled their claims with Jackson in exchange for payment of the $12,500 policy limits. In addition, plaintiffs settled their claims with Selby and Dr. Barton in exchange for a payment of $510,000 out of the available $1,000,000. Plaintiffs also settled their claims with CIGNA.[2] As a result of these settlements, plaintiffs dismissed Jackson, Selby, Dr. Barton and CIGNA from the lawsuit pursuant to Civ.R. 41(A). As such, only the claims against Grange remain viable.
 {¶ 7} Grange filed a motion for summary judgment contending that it was entitled to summary judgment as a matter of law on all of plaintiffs' claims. As to plaintiffs' declaratory judgment claims, Grange first argued that UM/UIM coverage was not available to plaintiffs pursuant to the policy's "other owned vehicle" exclusion. Grange maintained that the exclusion applied because Lamar, not his parents, owned the vehicle he was operating at the time of the accident and the vehicle was not insured by Grange. Grange also asserted that even if UM/UIM coverage was available, it was entitled to set off the $1,012,500 available limits of the Jackson and Selby/Dr. Barton policies (or, at a minimum, the amounts of settlement, $522,500) against its policy limits pursuant to R.C. 3937.18(A)(2), and the language of the Grange policy. Grange argued that since the amounts available to plaintiffs were greater than the limits of the Grange policy, plaintiffs were precluded from any recovery. Finally, Grange asserted that it was entitled to summary judgment on plaintiffs' bad faith claim, as there existed a reasonable basis to dispute coverage.
 {¶ 8} Plaintiffs filed their own motion for summary judgment, contending that they were entitled to summary judgment as a matter of law on the declaratory judgment claims. Plaintiffs first asserted that UM/UIM coverage was available, as the "other owned vehicle" exclusion did not apply because Antoinette, not Lamar, owned the vehicle involved in the accident, and, as a matter of law, the vehicle was covered by the Grange policy for 30 days from the August 17, 1999 purchase date. Plaintiffs further argued that Grange was not entitled to set off any amounts either available from, or actually received from the medical malpractice defendants, because set off under R.C. 3937.18(A)(2) applies solely to automobile liability policies, not professional liability policies. Plaintiffs further contended that even if R.C. 3937.18(A)(2) did apply to insurance policies other than automobile liability policies, Jackson and the medical malpractice defendants were not joint tortfeasors; rather, Jackson was the sole tortfeasor. Contemporaneously, plaintiffs filed a memorandum contra Grange's motion for summary judgment, asserting, inter alia, that genuine issues of material fact existed as to their bad faith claim.
 {¶ 9} Thereafter, the parties filed an agreed entry averring that the law and arguments set forth in the motions and memoranda filed as to the Grange policy issued to Lamar's parents applied with equal force to the claims asserted by Monique under her Grange policy.
 {¶ 10} By decision filed September 26, 2005, the trial court granted Grange's summary judgment motion and denied plaintiffs' motion for summary judgment. With regard to Grange's argument as to the "other owned vehicle" exclusion, the court determined that the evidence conflicted as to ownership of the vehicle Lamar was operating at the time of the accident, rendering summary judgment inappropriate as to that issue. The court further found that Grange was entitled to set off the available limits of the Jackson and Selby/Dr. Barton policies against the UM/UIM coverage limits in plaintiffs' policies, resulting in no UM/UIM coverage being available to plaintiffs. Accordingly, the court held that summary judgment was appropriate as a matter of law on the set off issue. As to plaintiffs' bad faith claim, the court concluded that Grange had a reasonable justification for disputing plaintiffs' UM/UIM claims; thus, Grange was entitled to summary judgment on that issue. The court confirmed its decision in its November 1, 2005 judgment entry.
 {¶ 11} Appellants timely appeal, advancing two assignments of error:
 ASSIGNMENT OF ERROR 1.
 THE TRIAL COURT PREJUDICIALLY ERRED BY CONCLUDING THAT GRANGE IS ENTITLED TO SET OFF ITS UNDERINSURED LIMITS AGAINST AMOUNTS RECEIVED FROM SUBSEQUENT MEDICAL MALPRACTICE.
 ASSIGNMENT OF ERROR 2.
 THE TRIAL COURT PREJUDICIALLY ERRED BY GRANTING SUMMARY JUDGMENT ON APPELLANTS' BAD FAITH CLAIM.
 {¶ 12} Because plaintiffs' assignments of error arise out of the trial court's ruling on the parties' motions for summary judgment, we view the disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. In conducting our view, we apply the same standard as that employed by the trial court. Maust v. Bank One, Columbus, N.A.
(1992), 83 Ohio App.3d 103, 107. "Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try * * *." Norris v. Ohio Std. Ohio Co. (1982),70 Ohio St.2d 1, 2. Summary judgment should be rendered only where the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C);State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
 {¶ 13} In the first assignment of error, plaintiffs contend the trial court erred in concluding that Grange is entitled to set off the amount available from the medical malpractice defendants' professional liability insurance policy against its UM/UIM policy limits pursuant to R.C. 3937.18(A)(2) and the language of the Grange policies.
 {¶ 14} R.C. 3937.18 governs the provision of UM/UIM coverage. In the last several years, the statute has been amended numerous times. Prior to the most recent amendment, R.C. 3937.18 required an insurer to offer UM/UIM coverage whenever an automobile liability or motor vehicle liability policy of insurance was issued. If the insurer did not offer UM/UIM coverage, such coverage became part of the policy by operation of law. Davidson v. Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262, 264. Due to the oft-changing status of UM/UIM law in Ohio, we must first determine the applicable policy period and the corresponding version of R.C. 3937.18.
 {¶ 15} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins.Group of Cos. (1998), 82 Ohio St. 3d 281, syllabus. Here, Lamar's parents' policy was issued on May 2, 1999, and covered the period from May 2, 1999 to November 2, 1999, which included the date of the accident, September 8, 1999. Monique's policy covered the period from August 1, 1999 to February 1, 2000, which also included the date of the accident. Accordingly, the version of R.C. 3937.18 enacted by Am. Sub. H.B. No. 261, which became effective September 3, 1997, controls this case.
 {¶ 16} Relevant to this appeal, R.C. 3937.18(A)(2) provides:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
(Emphasis added.)
 {¶ 17} Plaintiffs contend that Grange is not entitled to set off the $1,000,000 available limit of the medical malpractice defendants' professional liability policy (or, alternatively, the amount of settlement, $510,000) against its UM/UIM coverage because it does not constitute an "amount[ ] available for payment under * * * [an] applicable bodily injury liability bond[ ] [or] insurance polic[y] covering persons liable to the insured." More particularly, plaintiffs maintain that R.C. 3937.18(A)(2) limits set off to "amounts available for payment" only from applicable automobile liability insurance policies. Plaintiffs further contend the medical malpractice defendants are not "persons liable to the insured" under R.C. 3937.18(A)(2). More specifically, plaintiffs argue that since no medical malpractice would have occurred but for the tortious acts of Jackson which caused the original injury, Jackson and the medical malpractice defendants are not joint tortfeasors; rather, Jackson is the sole tortfeasor, i.e., the only "person liable to the insured" for all damages directly and proximately caused by his negligence, including subsequent medical malpractice. Thus, argue plaintiffs, set off is appropriate only for amounts available under Jackson's automobile liability insurance policy.
 {¶ 18} In contrast, Grange argues that the phrase "amounts available for payment under all applicable liability bonds and insurance policies" includes any amount available for payment from any type of bodily injury liability insurance policy, including a professional liability insurance policy. Grange further contends the "persons liable to the insured" language encompasses all those who make payment to the insureds; accordingly, since the medical malpractice defendants, through their professional liability insurer, made payment to Grange's insureds, they are "persons liable to the insured."
 {¶ 19} Both parties support their positions with case law that is not directly on point. Plaintiffs cite Clark v. Scarpelli (2001),91 Ohio St.3d 271, for the proposition that R.C. 3937.18(A)(2) limits set off to amounts available for payment only from applicable automobile liability policies. The Supreme Court of Ohio found the phrase "amounts available for payment" in R.C. 3937.18(A)(2) "susceptible of at least two conflicting interpretations," thus requiring an examination of the General Assembly's intent in including the language in the statute.
 {¶ 20} To that end, the court noted that in James v. Michigan Mut.Ins. Co. (1985), 18 Ohio St.3d 386, it held, as to the issue of set off, that," ' [a]n insurer may apply payments made by or on behalf of anunderinsured motorist as a set off directly against the limits of its underinsured motorist coverage * * *.' " Id., quoting James, at paragraph two of the syllabus. (Emphasis added.) The court further asserted that "[i]t is clear that underinsured motorist coverage * * * was not intended to be 'excess insurance' to the tortfeasor'sapplicable automobile liability insurance." Id. at 276. (Emphasis added.) In addition, the court stated that "we construe the 'amounts available for payment' language in R.C. 3937.18(A)(2) * * * as requiring a comparison between the amounts that are actually accessible to the injured claimant from the tortfeasor's automobile liability insurancecarrier and the injured claimant's own underinsured motorist coverage limits." Id. (Emphasis added.)
 {¶ 21} Based upon the foregoing three statements, plaintiffs maintain that the Clark court "held" that R.C. 3937.18's right of set off is limited exclusively to amounts accessible from the tortfeasor's automobile liability insurance policy. Applying this "holding," plaintiffs aver that R.C. 3937.18's right of set off does not include amounts accessible from other types of liability insurance, including medical malpractice insurance. We cannot agree that Clark expressly stands for the proposition urged by plaintiffs. Initially, we note that the court's actual holding is set forth in the syllabus, which states that "[f]or the purpose of set off, the 'amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." (Emphasis added.) The syllabus law does not precisely support plaintiffs' contention, as it merely "includ[es]" the tortfeasor's automobile liability policy in the phrase "all bodily injury liability bonds and insurance policies." Further, theClark court was not called upon to address the issue raised in the instant appeal, as no subsequent medical malpractice claim was asserted.
 {¶ 22} Likewise, plaintiffs support their claim that Jackson is the sole tortfeasor, i.e., the only "person liable to the insured" for purposes of R.C. 3937.18(A)(2), with two cases that are not directly applicable — Bendner v. Carr (1987), 40 Ohio App.3d 149 and Traster v.Steinreich (1987), 37 Ohio App.3d 99. Although both cases concern medical malpractice and arguably conclude that an original tortfeasor remains liable for damages proximately resulting from the negligence of subsequent tortfeasors whose acts are necessitated by the negligence of the original tortfeasor, neither involves an insurance claim, UM/UIM or otherwise; thus neither case definitively answers the precise question at issue here.
 {¶ 23} In contrast to plaintiffs' position, Grange alleges that this court, as well as other Ohio appellate courts, have determined that the limits of UM/UIM coverage are to be reduced by any amount of liability coverage available to any person liable to the insured. Grange cites several cases in support of its claim — Blackburn v. Hamoudi (Sept.18, 1990), Franklin App. No. 89AP-1102, Vawter v. Select Transp. Inc. (Dec. 2, 1999), Franklin App. No. 99AP-191, Masenheimer v. Disselkamp, Butler App. No. CA2002-08-200, 2003-Ohio-814, Gray v. State Farm Mut. Auto.Ins. Co. (Mar. 4, 2002), Butler App. No. CA2001-07-174, Roberts v.Allstate Ins. Co. (Dec. 17, 2001), Butler App. No. CA2001-06-133,Heaton v. Carter, Licking App. No. 05-CA-76, 2006-Ohio-653; Hower v.Motorists Mut. Ins. Co. (1992), 65 Ohio St.3d 442, and Motorists Mut.Ins. Co. v. Huron Road Hosp. (1995), 73 Ohio St.3d 391 — none of which are conclusively dispositive of the issue posed in this case.
 {¶ 24} Blackburn, Vawter, Masenheimer, Gray, Roberts andHeaton all involved circumstances in which two separate drivers' combined negligence resulted in an automobile accident which injured (or killed) the plaintiff (or the plaintiffs' decedent). Each of the tortfeasors had automobile liability insurance policies; each of the plaintiffs (or plaintiffs' decedents) had automobile liability insurance policies which included UM/UIM coverage. The respective courts were asked to construe the set off provision of R.C. 3937.18(A)(2) only as it related to the multiple automobile liability policies. None of the cases involved, as here, allegations of medical malpractice committed following the automobile accidents. Thus, those courts did not have occasion to opine as to whether the set off provision of R.C.3937.18(A)(2) encompassed liability insurance policies other than automobile liability policies.
 {¶ 25} Further, although the Hower court found that the phrase "persons liable to the insured" in the set off provision of R.C.3937.18(A)(2) meant "all those who have made payment to the insured," the court construed the statutory language only as it related to an automobile liability policy of insurance owned by the driver of the vehicle in which the insureds were passengers at the time of the accident. In so finding, the court specifically noted that the purposes of UIM protection were not frustrated by the setting off of insurance payments by all those "contractually liable" to the insured. In contrast to the instant case, Hower did not involve subsequent medical malpractice or a professional liability insurance policy.
 {¶ 26} Finally, while the underlying facts of Huron are arguably similar to the case at bar — the decedent died after being subjected to medical negligence in the treatment of injuries sustained in an automobile collision with a negligent driver — the legal issue before the court was different than that before us today. In Huron, the executor of the decedent's estate filed a negligence action against the tortfeasor, but asserted no allegations against the medical providers. The tortfeasor's insurer settled the lawsuit, paying over $1.3 million in damages. The insurer, asserting its subrogation rights from its insured, then filed an indemnity action against the medical providers, alleging that due to their negligence, it paid over $1 million more in damages that it otherwise would have had to pay. The issue to be resolved, as framed by the Supreme Court of Ohio, was "whether a common-law right of indemnity or a statutory right of contribution controls the relationship between a tortfeasor and a subsequently negligent medical provider, when the medical provider negligently causes further injury or aggravates the original injury caused by the tortfeasor[-driver]." Id. at 393.
 {¶ 27} The court determined that the substance of the insurer's claim was one for contribution. In so finding, the court noted that the tortfeasor and the medical providers, if negligent, were "concurrently negligent." The court defined "concurrent negligence" as "consist[ing] of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury." The court found that "[t]hough separate in time, the negligence of [the insurer's] insured[ ] led to the alleged negligence of the [medical providers], and combined with the [medical providers'] alleged negligence to cause [the decedent's] death, the single indivisible injury." Id. at 394. The court ultimately held that "[w]hen a medical provider's negligent treatment of bodily injuries caused by a tortfeasor results in further injury or aggravation of the original injury, R.C. 2307.31 creates a right of contribution between the tortfeasor and the medical provider as to indivisible injuries." Id. at paragraph one of the syllabus. As the set off provision of R.C. 3937.19(A)(2) was not at issue in Huron, the case is not dispositive.
 {¶ 28} Having determined that none of the case law cited by the parties definitively resolves the issue before us and having failed to discover in our independent research any Ohio case law that is directly on point, we must review the canons of statutory construction, as resolution of the case involves an evaluation of whether the trial court properly applied and/or interpreted the set off provision of R.C.3937.18(A)(2).
 {¶ 29} "The primary duty of a court in construing a statute is to give effect to the intention of the Legislature enacting it. In determining that intention, a court should consider the language used and the apparent purpose to be accomplished, and then such construction should be adopted which permits the statute and its various parts to be construed as a whole and gives effect to the paramount objective to be attained." Humphrys v. Winous Co. (1956), 165 Ohio St. 45, 49, citingCochrel v. Robinson (1925), 113 Ohio St. 526.
 {¶ 30} "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." Sears v. Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus. However, "[i]t is firmly established that a statute is ambiguous when its language is subject to more than one reasonable interpretation." Family Medicine Found., Inc. v.Bright, 96 Ohio St.3d 183, 772 N.E.2d 1177, 2002-Ohio-4034, at ¶ 8. "It is only where the words of a statute are ambiguous or are based upon an uncertain meaning or there is an apparent conflict of some provisions that a court has the right to interpret a statute." Drake-Lassie v.State Farm Ins. Cos. (1998), 129 Ohio App.3d 781, 788, 719 N.E.2d 64, citing Kroff v. Amrhein (1916), 94 Ohio St. 282, and R.C. 1.49.
 {¶ 31} Because we believe that the set off provision of R.C.3937.18(A)(2) reasonably can be interpreted in more than one way, we find it to be ambiguous. As such, we must look beyond the words of the statute and construe the set off provision of R.C. 3937.18(A)(2) in a manner that reflects the intent of the General Assembly.
 {¶ 32} Although the case law urged by the parties is not precisely on point, we find that it provides some guidance in resolving the issue before us. The language relied upon by plaintiffs in the Clark case lends credence to its argument that R.C. 3937.18(A)(2) limits set off to amounts available for payment only from applicable automobile liability bonds or insurance policies. For instance, the court stated that an insurance carrier could apply payments made on or behalf of "an underinsured motorist" as a set off directly against the limits of its UIM coverage. The court further stated that R.C. 3937.18(A)(2) was clearly not intended to be excess insurance to the tortfeasor's "applicable automobile liability insurance." Finally, the court stated that construing the "amounts available for payment" language required a comparison between the amounts actually accessible to the injured claimant from "the tortfeasor's automobile liability insurance carrier" and the injured claimant's own UIM coverage limits. Each of these statements speak only to a tortfeasor's automobile liability policy; none remotely suggest that the set off provision was intended to encompass bodily injury liability policies other than automobile liability policies. Here, the only "amount available for payment" from an automobile liability policy is the $12,500 settlement received from Jackson's insurance carrier. Even the Blackburn case cited by Grange contains language suggesting that the set off provision applies only to automobile liability policies: "Uninsured motorist policies * * * insure only that the policyholder will receive a minimum amount of total compensation regardless of the insurance coverage carried by theother driver." (Emphasis added.)
 {¶ 33} We further find the Bendner case persuasive in construing the "persons liable to the insured" language. In that case, as here, the plaintiff sustained an injury in an automobile accident and was subsequently subjected to medical malpractice in the treatment of those injuries. The court of appeals concluded that the trial court erred in refusing to instruct the jury that the tortfeasor-driver was liable for all damages proximately flowing from the automobile accident, regardless of whether the plaintff's subsequent medical treatment may have exacerbated the plaintff's injuries. In so finding, the court noted that," ' [t]he negligence of a tortfeasor in causing the original injury is the proximate cause of damages flowing from the subsequent negligence or unskilled treatment thereof by a physician and * * * the original wrongdoer is liable therefore.' " Id. at 154. Applying Bendner, we agree with plaintiffs' contention that Jackson, the tortfeasor who caused Lamar's original injury in the automobile accident, is the "person[ ] liable to the insured" for all damages directly and proximately caused by his negligence. Under the circumstances here, Jackson is the sole tortfeasor liable to the insured for which R.C. 3937.18(A)(2) grants set off.
 {¶ 34} A hypothetical posed by the panel at oral argument illustrates that Grange's interpretation of Hower, that is, that "persons liable to the insured" means all those who have made payment to an insured for any tort or contractual liability, is untenable. In the hypothetical, a person receives treatment at a hospital following an automobile collision with an underinsured motorist. On the way home from the hospital, the person is injured in a subsequent automobile accident. The question posed to Grange's counsel was whether the injured party's UIM carrier would be entitled to set off for both accidents. Counsel for Grange answered the question in the negative on the basis that the accidents were separate in time. However, if Grange's reading ofHower is accepted, that is, that the UIM carrier is entitled to set off amounts received for "any tort," the question posed in the hypothetical must be answered in the affirmative. Certainly this is not what the Ohio General Assembly contemplated when enacting R.C. 3937.18.
 {¶ 35} The Blackburn case also arguably lends credence to plaintiffs' interpretation of "persons liable to the insured." Therein, the court stated that "[a]s the set off provision clearly indicates, once the insured has received an amount in compensation from those liable for theaccident equal to the limits of the uninsured motorist policy, the carrier's limit of liability is reduced to zero and the carrier need make no payment to the insured." Id. (Emphasis added.)
 {¶ 36} We find that adoption of plaintiffs' construction of the set off provision permits the various parts of R.C. 3937.18(A)(2) to be construed as a whole. Humphrys, supra. The sentence preceding the set off provision states that "[u]nderinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's underinsured motorist coverage if the person or persons liable wereuninsured at the time of the accident." The italicized language arguably suggests that R.C. 3937.18(A)(2) is concerned only with automobile liability policies and the liability of the person or persons involved in the accident.
 {¶ 37} Further, public policy cannot support the interpretation urged by Grange. The goal of UM/UIM insurance is to provide sufficient compensation for parties injured in automobile accidents. If Grange is permitted to set off the medical malpractice in defendants' insurance settlement as well as Jackson's insurance payment, it receives a windfall based solely upon the unfortunate circumstance that its insured was subjected to medical malpractice following the automobile accident.
 {¶ 38} Plaintiffs further contend that the Grange policy language limits set off to automobile policies. Interpretation of an automobile liability insurance policy presents a question of law that is reviewed without deference to the trial court. See, e.g., Nationwide Mut. FireIns. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. When the language utilized in an insurance policy is clear and unambiguous, the policy must be enforced as written, giving words used in the policy their plain and ordinary meaning. See Cincinnati Indemn. Co. v.Martin (1999), 85 Ohio St.3d 604, 607. However, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Clark, supra, at 282, quotingKing v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus.
 {¶ 39} The pertinent policy language is as follows:
 A. We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
 1. Bodily injury suffered by the insured and caused by an accident * * *
 * * *
 C. "Uninsured Motor Vehicle" means a land motor vehicle * * *
 * * *
 4. Which is an underinsured motor vehicle. An underinsured motor vehicle means a land motor vehicle * * * to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.
 (Emphasis sic.) (Emphasis added.)
 {¶ 40} Regarding Grange's contractual right of set off, the pertinent language states as follows:
 A. The limit of liability shown in the declarations under Uninsured Motorists Coverage for "each person" is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident. * * *
 * * *
 B. The limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.
 (Emphasis sic.) (Emphasis added.)
 {¶ 41} The language employed by Grange in the foregoing provisions evidences its intent to limit its coverage to automobile accidents involving uninsured or underinsured motor vehicles. These provisions demonstrate that the contract of insurance for UM/UIM coverage provided in the Grange policy is solely concerned with automobile accidents, not subsequent medical malpractice. Further, the set off provision of the policy employs language clearly drawn from the set off provision in R.C.3937.18(A)(2). We have already construed the set off provision of R.C.3937.18(A)(2) to encompass amounts available for payment only from automobile liability policies covering persons liable to the insured for original injuries sustained in the automobile accident. Accordingly, we conclude that Grange's policy does not permit it to set off the $700,000 settlement received from the medical malpractice defendants' liability insurance carrier against its UIM coverage limits.
 {¶ 42} Our conclusion that Grange is not entitled to set off the medical malpractice settlement from its UM/UIM coverage limits under either R.C. 3937.18(A)(2) or the language of the policy does not end the matter, as Grange has asserted an alternative argument, i.e., that UM/UIM coverage is not available to plaintiffs pursuant to the "other owned vehicle" exclusion contained in the policy. This alternative argument is the subject of a motion to strike filed by plaintiffs, which contends that the argument is not properly before us because it was not raised in a cross-appeal as required by App.R. 3(C), which states:
 (1) Cross appeal required. A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4.
 (2) Cross appeal not required. A person who intends to defend a judgment or order appealed by an appellant as a ground other than that ruled on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal.
 (Emphasis added.)
 {¶ 43} Pursuant to App.R. 3(C)(2), Grange was not required to file a notice of cross-appeal because it was merely attempting to defend the trial court's judgment on a ground other than that relied upon by the trial court. As such, we will address Grange's alternative argument.
 {¶ 44} In its motion for summary judgment, Grange asserted that the vehicle involved in the accident was owned by Lamar and that coverage was therefore precluded based upon an exclusion in the Grange policy. The pertinent policy language provides:
 A. We do not provide Uninsured Motorist Coverage for bodily injury sustained by any person:
 1. While occupying or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy * * *
(Emphasis sic.)
 {¶ 45} Grange supported its contention with the affidavit of its counsel in which he attested that plaintiffs responded to Grange's request for production of documents with a certificate of title listing Lamar as the purchaser of the car.
 {¶ 46} In both their motion for summary judgment and memorandum contra Grange's motion for summary judgment, plaintiffs maintained that the "other owned vehicle" exclusion did not apply because Antoinette, not Lamar, owned the vehicle involved in the accident. In support, plaintiffs cited Antoinette's deposition statement that she paid for the car. (Feb. 24, 2004 deposition at 34.) Plaintiffs also relied upon Antoinette's affidavit, in which she stated that "[she] entrusted the purchase price of the [car] to Lamar and Lamar purchased the [car] on [her] behalf" and that [she] owned the [car] and did not gift the vehicle to Lamar." (January 25, 2005 Affidavit of Antoinette Gray, ¶ 6 and 9.) In addition, plaintiffs cited the police accident report which lists Ernest as the owner of the vehicle.
 {¶ 47} In its reply memorandum, Grange cited other portions of Antoinette's deposition testimony wherein she referred to the car as "his" (Lamar's) or averred that "he" (Lamar) took some action "after he got it." Id. at 32-33. In addition, when questioned about how Lamar acquired the car, Antoinette responded that "he purchased it from an acquaintance * * *." Id. at 34. Grange further relied upon plaintiffs' responses to interrogatories which list the vehicle as an asset of Lamar's. Grange also argued that Antoinette's affidavit testimony should not be considered because it contradicts her deposition testimony and discovery responses.
 {¶ 48} The trial court concluded that the evidence submitted by the parties conflicted as to ownership of the car, thereby creating a genuine issue of material fact as to Grange's "other owned vehicle" exclusion argument. We agree. Antoinette testified by deposition that she paid for the car and by affidavit that the car was purchased on her behalf and that she owned the car; the police report indicates that Ernest owned the car. On the other hand, in her deposition, Antoinette referred to the car as Lamar's and averred that he purchased it; in addition, plaintiffs listed the car as one of Lamar's assets in response to Grange's interrogatories, and provided Grange with a certificate of title listing Lamar as the owner.
 {¶ 49} We further agree with the trial court that Antoinette's affidavit testimony does not necessarily contradict her deposition testimony and/or her discovery responses. The issue of ownership was never directly addressed at the deposition. Further, her deposition testimony is confusing at best, and her discovery responses are not conclusive of ownership. Further, even without the affidavit, the remaining evidence conflicts as to ownership of the vehicle. Because a genuine issue of material fact exists as to ownership of the vehicle, summary judgment is inappropriate as to Grange's "other owned vehicle" exclusion argument. The first assignment of error is sustained.
 {¶ 50} By the second assignment of error, plaintiffs contend the trial court erred in granting summary judgment to Grange on plaintiffs' bad faith claim. We disagree.
 {¶ 51} "Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer." Hoskins v.Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, paragraph one of the syllabus. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, paragraph one of the syllabus.
 {¶ 52} In their amended complaint, plaintiffs asserted in their fourth cause of action that Grange "breached its duty of good faith in the handling and payment of claims of their insureds." (Amended complaint, ¶ 23.) Although not specifically stated, the apparent impetus for plaintiffs' bad faith claim is that Grange "disputes the fact that coverage is due under such policy." (Amended complaint, ¶ 20.) Plaintiffs asserted no other facts to support their claim. In its motion for summary judgment, Grange argued that its reliance upon the terms of the contract as well as statutory and case authority supporting its construction of R.C. 3937.18(A)(2), provided a reasonable basis for its position that no coverage was available to plaintiffs. We agree. The set off issue presented in this case is one of first impression in Ohio. Under such circumstances, Grange's refusal to pay the claim was "predicated upon circumstances that furnish[ed] reasonable justification therefor." The second assignment of error is overruled.
 {¶ 53} Finally, we address plaintiffs' motion to strike Grange's submission of Hower, supra, as supplemental authority following oral argument. The Hower case is not "supplemental," as it was cited in Grange's brief and argued extensively at oral argument.
 {¶ 54} For the foregoing reasons, plaintiffs' first assignment of error is sustained and the second assignment of error is overruled. Plaintiffs' motion to strike a portion of Grange's brief is denied; plaintiffs' motion to strike Grange's submission of the Hower case as supplemental authority is granted. The judgment of the Franklin County Court of Common Pleas is hereby reversed and remanded for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed; cause remanded.
[1] Plaintiffs' original and amended complaints also named several "John Doe" defendants. The trial court dismissed those claims for failure of service.
[2] The terms of the CIGNA settlement are not part of the record and are not at issue here.